IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**TED STONE**                                                                                      **PETITIONER**

**V.**                                                                                 **NO. 1:14-CV-147-DMB-RP**

**CHRISTOPHER B. EPPS**                                                                       **RESPONDENT**

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is the Report and Recommendation issued by United States Magistrate Judge S. Allan Alexander recommending that Ted Stone's petition for writ of habeas corpus be dismissed with prejudice. Doc. #10. Because Judge Alexander's Report and Recommendation accurately states the facts and law, it will be adopted as the order of this Court.

## I
## Procedural History

### A. The Petition and Briefing

On August 20, 2014, Ted Stone filed in this Court a petition for writ of habeas corpus challenging his 2010 state court conviction for aggravated assault on his older sister, Carolyn. Doc. #1. In his petition, Stone argues that his defense counsel was constitutionally ineffective. Specifically, Stone claims his attorney: (1) "was ineffective in failing to subpoena witnesses and documents to trial;" (2) withdrew a self-defense instruction; (3) failed to make "a specific objection" at trial to the introduction of a restraining order issued against Stone; (4) failed to "inquire about" and "require" the production of the cane allegedly used in his crime; (5) failed to object at trial to the authenticity of an audio recording allegedly of Stone at a bail hearing; (6) failed to object at trial to the audio recording on Fifth Amendment grounds; and (7) "failed to call witnesses, and failed to subpoena or produce documents."

On October 28, 2014, Judge Alexander issued an order directing the respondent, Christopher Epps, to respond to the petition. Doc. #4. Epps filed a response to the petition on January 20, 2015. Doc. #7. However, for reasons unknown, the Court did not receive the state court record until April 6, 2016. Doc. #9.

### B. Report and Recommendation

On April 21, 2016, Judge Alexander entered a Report and Recommendation recommending that Stone's habeas petition, which was filed with the assistance of retained counsel, be dismissed with prejudice. Doc. # 10. In the Report and Recommendation, Judge Alexander set forth the relevant factual record as follows:

> Ted Stone, Kay Stone Hill, and Carolyn Stone are the children of Seretha Stone. On June 7, 2010, Ted Stone ("petitioner") went to visit his mother Seretha Stone at his sister Carolyn Stone's house. Due to prior threats and assaults by petitioner, Carolyn previously had obtained a restraining order requiring him to stay off her property. Carolyn, Kay and Seretha testified to the following events: after petitioner arrived at Carolyn's house, an altercation occurred, and petitioner beat Carolyn with his walking cane. Seretha grabbed the cane and tried to take it away from Stone. As she was pulling the cane, the rubber tip came off. Kay attempted to thwart the attack by striking petitioner with a cordless telephone. Stone pushed her into a chair, and then Kay ran outside and called the police.
>
> A grand jury indicted Stone for the aggravated assault of Carolyn Stone on July 26, 2010. Stone's jury trial began on October 5, 2010 in Itawamba County Circuit Court. Stone testified at trial, and offered a different version of events. He testified that his mother Seretha allowed him to enter the house. He sat in a chair in the living room, and was talking with Kay when Carolyn entered the room and began beating Seretha for allowing Stone to enter the house and arguing with Stone about the ownership of the house. Carolyn initiated the violence when she picked up the cordless phone and began striking Stone with it. He told her to stop, but she continued. He hit a footstool with his cane, at which point he conjectured that the cane's rubber tip must have fallen off. He then hit Carolyn "as hard as [he] could" in an attempt to get her away from him. He then agreed to leave, and, as he was limping out with his cane, Carolyn pushed him. As he was falling, he again hit her with the cane, this time causing her head to bleed. He testified that he awakened on the floor some time later and left the house immediately.
>
> Carolyn testified at trial that on various occasions between 2002 and 2005 Stone had slapped her, hit her in the face with a flyswatter, held a baseball bat over her

head while she was in bed while threatening to "beat [her] to a pulp" and kill her, and threatened to stalk, kill, and beat her with a hammer. In January 2005, Carolyn obtained a restraining order prohibiting Stone from entering her property. She testified that she and her mother actively avoided Stone – locking their doors and staying out of the front yard to avoid seeing Stone if he drove by – and, thus, had not seen much of Stone for the five months before the assault. As a result, Carolyn was surprised and afraid when she saw him in her living room on June 7.

At trial, the State sought to introduce into evidence Stone's multiple threats and attacks of Carolyn to prove motive, intent, preparation, plan, knowledge, and absence of mistake or accident. The State asserted that evidence of these threats and prior assaults was necessary to reveal the complete story of the crime for which Stone was being tried. The trial court agreed, and, after determining that the evidence was more probative than prejudicial, allowed the State to introduce evidence of Stone's prior bad acts. After the State had presented its case in chief, the trial judge denied petitioner's motion for a directed verdict. After receiving proper instruction from the court, the jury returned a guilty verdict of aggravated assault. Stone was sentenced to twenty years, with four years suspended, and a fine of $4,000. The court denied Stone's motion for judgment notwithstanding the verdict.

*Id*. at 1–3 (internal footnotes and citations omitted).

Judge Alexander rejected Stone's first and seventh enumerations of error (related to the failure to investigate and subpoena documents) because Stone could not show that the failure to call the identified witnesses or subpoena the identified medical records would have caused the jury to have "reasonable doubt about his guilt. Doc. #10 at 9 (citing *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998)). Specifically, Judge Alexander noted that "Stone provided no affidavits of the former justice court judge, the former sheriff[,] petitioner's physician, or attorney ..., all of whom if called at petitioner's trial would ... have testified favorably to Stone." *Id*.

Judge Alexander rejected the second ground (withdrawal of a self-defense instruction) because the record showed that Stone's attorney only withdrew the proposed self-defense instruction after the Court agreed to give an instruction that "was almost verbatim" to the proposed instruction. *Id*. at 10–11.

Judge Alexander denied the third ground (failure to specifically object to the alleged restraining order and related bad acts) because defense counsel objected to the introduction of the order and "[e]ven assuming defense counsel could be deemed deficient for 'allowing' this order into evidence, there was no prejudice in its admission given the overwhelming evidence of Stone's guilt introduced at trial." *Id*. at 12.

The Report and Recommendation rejected the fourth ground (failure to "inquire" about and "require" production of the cane used in the alleged attack) because: (1) the record showed "Defense counsel clearly inquired" about the cane; (2) Stone could not show prejudice in failing to require production because "there was no question based on the testimony at trial and petitioner's own admission that he hit the victim with a cane;" and (3) Stone was not entitled to a spoliation of evidence instruction. *Id*. at 13–14.

Judge Alexander rejected the fifth and sixth grounds (failure to object to the admission of the audio recording) because: (1) the challenges to the authenticity of the recording were "conclusory;" (2) the statement at the bail hearing was not a product of custodial interrogation; and (3) in light of the evidence presented at trial, Stone could not show prejudice arising from the introduction of the tape. *Id*. at 18–19.

No objection to the Report and Recommendation was filed within the initial deadline for doing so.

### C. Withdrawal of Stone's Attorney and Stone's Pro Se Objections

On May 26, 2016, Stone filed a motion for an enlargement of time to object to the Report and Recommendation, arguing that his counsel essentially abandoned him and refused to answer inquiries as to the status of his case. Doc. # 11. Days later, on May 31, 2016, David Daniels filed a motion to withdraw as Stone's attorney, representing that his recent hire as Assistant

District Attorney prohibited him from continuing to represent Stone. Doc. # 12. The next day, Daniels filed a second motion to withdraw. Doc. #13. The second motion to withdraw included a certificate of service stating that the motion had been mailed to Stone. Doc. #13-2. The second motion to withdraw was granted on June 2, 2016, and a copy of the order was mailed to Stone the same day.[1] Doc. # 14.

On June 14, 2016, this Court extended the deadline to object to the Report and Recommendation through and until July 14, 2016. Doc. #17. On July 18, 2016, the Court received from Stone pro se objections to the Report and Recommendation, set forth in a document titled, "Motion Opposing Report and Recommendation." Doc. #23. The objections include a certificate of service, signed by Stone, stating that the document was mailed on July 12, 2016. *Id*. at 41.

## II
## Standard of Review

Where objections to a report and recommendation have been filed, a court must conduct a "de novo review of those portions of the ... report and recommendation to which the Defendants specifically raised objections. With respect to those portions of the report and recommendation to which no objections were raised, the Court need only satisfy itself that there is no plain error on the face of the record." *Gauthier v. Union Pac. R.R. Co.*, 644 F.Supp.2d 824, 828 (E.D. Tex. 2009) (citing *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996)).

## III
## Analysis

In his objections, Stone argues that this Court should not adopt the Report and Recommendation because: (1) it is based on an "unquestioning acceptance of Carolyn's perjured

---

[1] Stone is currently proceeding *pro se* in this action.

testimony," which he maintains could have been rebutted if his trial counsel had subpoenaed the proper witnesses and records, investigated the facts, and challenged the evidence; (2) it found Carolyn had obtained a restraining order against Stone; (3) the Mississippi Supreme Court's decision on direct appeal refusing to consider his ineffective assistance of counsel claims and holding his claim of a *Miranda*[2] violation procedurally barred represents a "catch-22" that prevented him from pursuing these claims properly; (4) the Magistrate Judge erred in concluding that Stone had failed to provide affidavits from uncalled witnesses; (5) the Magistrate Judge erred in adopting the state court's "unreasonable" interpretation of the facts regarding the source of the injury as a "metal" cane, as well as the extent of the injury suffered by the victim and the force necessary to cause it; (6) the Magistrate Judge erred in concluding that the state's failure to produce the cane used in the assault was not prejudicial; (7) the Magistrate Judge failed to address relevant authority; (8) the Magistrate Judge erred in failing to consider that the victim was manipulated into testifying; and (9) Stone himself was impaired during his trial due to his use of prescription painkillers. *See* Doc. #23 at 3–39.

### A. Witnesses and Records

As explained by Judge Alexander, Stone's complaints that his trial counsel failed to produce evidence and investigate facts are speculative. Stone has not presented evidence (beyond his conclusory assertion) that Carolyn was ever convicted of perjury, or that records (medical or otherwise) exist that would have supported his claim of self-defense or otherwise impeached Carolyn's testimony in any meaningful way. While Stone argues that the records are not before the Court because of the ineffectiveness of his trial counsel, the Court notes that Stone

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

could have produced such evidence on post-conviction review.³ *See, e.g.*, Doc. #9-8 at 23–26. He did not. As a result, his allegations fail to raise a constitutional issue. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of ineffective assistance of counsel do not raise constitutional issue in federal habeas proceeding) (citations and quotation marks omitted).

### B. "Restraining Order"

In a footnote to his objections, Stone writes that, had Judge Alexander conducted a proper review of the record, she "would have seen that Carolyn had never at any time obtained a restraining order …." It appears Stone's objection is based on the fact that Stone was never actually subjected to a "restraining order" but was instead, as a condition of obtaining a suspended sentence for a 2005 conviction for trespass, prohibited from entering Carolyn's property. *See Stone v. State*, 94 So.3d 1078, 1088 (Miss. 2012) (Chandler, J., dissenting). However, while the Report and Recommendation may have mislabeled the relevant document, nothing in the opinion suggests that this misnomer had any impact on the ultimate decision. Accordingly, this enumeration of error is without merit.

### C. Mississippi Supreme Court Decision

Stone argues that the Report and Recommendation does not acknowledge that the Mississippi Supreme Court's decision on direct appeal prevented him from properly raising his ineffective assistance of counsel and *Miranda* claims. It is unclear what this objection has to do with Judge Alexander's Report and Recommendation. Nevertheless, Stone was permitted to

---

³ In his objections, Stone argues that the identities of potential witnesses and the contents of their potential testimony were "matter[s] of record" based on testimonies in other proceedings. Doc. #23 at 15. However, even if Stone could establish what perspective witnesses would have said, he still would not be entitled to relief here because he has offered no evidence that the relevant witnesses were available and willing to testify at trial. As Judge Alexander explained, a petitioner challenging the absence of a witness must "demonstrate that the witness was available to testify and would have done so …." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

7

raise such claims on post-conviction review, and the claims were considered on their merits. *See* Doc. #9-8 at 23–27; 35-42; *see also* Doc. #7-2.

### D. Judge Alexander's Observation Regarding Lack of Affidavits

Stone maintains that Judge Alexander incorrectly noted in the Report and Recommendation that Stone had failed to provide affidavits from witnesses stating that they would have testified for him favorably at trial. Specifically, Stone points to the affidavit of former Itawamba County Sheriff Leon Hayes, which is in the record. *See* Doc. #23 at 16-17. The record does contain an affidavit from Hayes; however, the affidavit does not state that he was willing to testify on Stone's behalf at his trial, or that he would have been able to provide relevant testimony to Stone's claims of self-defense. In the absence of such statements, Stone's objection must be overruled. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

### E. "Adoption" of State Court Facts

Stone also argues that the state court unreasonably interpreted the facts in this case, claiming that the cane he used in the attack was inaccurately described and depicted as a deadly weapon. On review, state court factual determinations are presumed correct unless rebutted with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.").

Stone asserts that the state court erroneously described the lightweight cane used in the assault as being made of metal, and he claims that the laws of basic physics dictate that the cane

could not be a deadly weapon. *See* Doc. #1 at 17 (Stone's description of cane as "amazingly light and thin"). He also maintains that the state's failure to produce the cane was prejudicial, as had the jury seen the cane, it would have been able to determine that an aggravated assault could not have occurred due to the physics involved. *See* Doc. #23 at 22–28. He additionally argues that the state court misstated the number of head wounds the victim suffered, and that the doctor testifying as to her injuries improperly equated blood loss with extent of injury. Stone claims that the Magistrate Judge erred in adopting the state court's "unreasonable" interpretation of the facts regarding the extent of the injury suffered by the victim and the force necessary to cause it.

The Court notes that the emergency room doctor who testified at trial stated that the victim told him she had been struck with a metal cane, and the victim's "significant" injuries were consistent with being struck with a metal cane. *See* Doc. #9-3 at 2-3, 8. Therefore, there was testimony in the record to support the conclusion that the cane used in the assault was metal. While Stone asserts that the state court decision mentioned multiple scalp injuries while the emergency room doctor only mentioned one scalp injury, the state court found that the photos of the victim taken by the paramedics following the assault showed multiple head wounds. *Stone*, 94 So. 3d at 1083. Additionally, while the emergency room doctor testified the medical records stated that the victim sustained "only the one significant laceration" to her scalp "that required staples," he stated that smaller contusions are often not included in reports. Doc. #9-2 at 152. Therefore, Stone has failed to rebut the state court's findings with regard to these issues.

### F. Absence of the Cane

Regarding the failure to produce the cane, the Court notes that a defendant may be guilty of aggravated assault under Mississippi law in one of two ways: (1) by attempting to cause or purposely or knowingly causing any degree of bodily injury with a deadly weapon; or (2) by

9

attempting to cause serious bodily injury or causing such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. Miss. Code Ann. § 97-3-7(2). It is not necessary under Mississippi law that "serious bodily injury" with a "deadly weapon" both be proved to support a conviction of aggravated assault. *See, e.g., Russell v. State*, 924 So. 2d 604, 607 (Miss. Ct. App. 2006). Therefore, the jury could have found the nature of the victim's injuries sufficient to support Stone's guilt without determining that he employed a deadly weapon. *See, e.g., Vance v. State*, 803 So. 2d 1265, 1269–70 (Miss. 2002) (noting evidence could support finding that defendant was likely to produce serious bodily injury even though he only used his hand to strike victim once in head).

Additionally, whether an item that is not inherently dangerous is a deadly weapon is a factual question to be determined by a jury. *State v. Sims*, 80 Miss. 381, 386 (1902). Under the facts presented, Stone's jury could find that someone beaten with a cane had been assaulted with a deadly weapon. *See, e.g., Westbrook v. State*, 29 So. 3d 828, 836 (Miss. Ct. App. 2009) (baseball bat can be deadly weapon); *Jenkins v. State*, 913 So. 2d 1044, 1049-50 (Miss. Ct. App. 2005) (pistol used to strike victim in head deadly weapon). Therefore, the exculpatory value of the cane is not apparent, and Stone has not demonstrated how counsel's failure to secure its presence at trial prejudiced him.

### G. Omission of Relevant Authority

In his objections, Stone argues that the Report and Recommendation "fails to address *Old Chief* [*v. United States*, 519 U.S. 172 (1997)] or the State's effective denial of the Petitioner's 5th Amendment right not to testify." Although it is less than clear, it appears Stone is arguing that the trial court erred in admitting the bad acts testimony and that Judge Alexander erred in failing to reach such a conclusion. However, this argument misstates the grounds for Judge Alexander's

10

recommendation. Judge Alexander did not hold the trial court properly admitted the prior bad acts evidence. Rather, Judge Alexander held that Stone's trial counsel did not fail to object to the introduction of such evidence and that even if he did, such failure was harmless given the weight of evidence supporting guilt. Doc. #10 at 11–13. Given this analytical structure, Stone's objection, which relates to the correctness of the admission of evidence, is irrelevant.

### H. "Manipulated" Testimony and Drug Use

Stone's allegations that Carolyn was manipulated into testifying and that he was under the influence of pain medication at the time of trial does not appear to be an objection to the Report and Recommendation, but rather, a newly-raised independent argument for why the writ should issue in this case. Therefore, these allegations are waived and do not warrant discussion. *See Cupit v. Whitley*, 28 F.3d 532, 535 & n.5 (5th Cir. 1994) (party waived legal argument by failing to raise it before magistrate judge).

### IV
### Conclusion

For the reasons above, the Court concludes that Judge Alexander's order granting Daniels' motion to withdraw was neither clearly erroneous nor contrary to law. Stone's motion for reconsideration [19], which this Court has interpreted as objections to Judge Alexander's order, is **OVERRULED**. Accordingly, the Report and Recommendation [10] is **ADOPTED** as the opinion of this Court. Stone's petition [1] is **DISMISSED with prejudice**.

**SO ORDERED**, this 22nd day of May, 2017.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**